FILED

March 10, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 10:00 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | |
|---|---|
| Lea Ann Lewis | )    **Docket No.: 2015-06-0456** |
|      Employee, | ) |
| v. | )    **State File Number: 51493-2015** |
| Molly Maid | ) |
|      Employer, | )    **Judge Robert Durham** |
| And | ) |
| Accident Fund General Insurance | ) |
|      Insurance Carrier/TPA. | ) |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing (REH) filed by the employee, Lea Ann Lewis, on July 7, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if the employer, Molly Maid, is obligated to provide workers' compensation benefits.

The dispositive issue is whether Ms. Lewis sustained an injury to her low back that arose primarily out of and in the course and scope of her employment with Molly Maid.[1] Secondary issues include whether Ms. Lewis is entitled to reimbursement for medical expenses, temporary disability benefits, mileage expenses, and additional medical care. The Court finds the evidence submitted by Ms. Lewis is sufficient to establish she is entitled to a panel of physicians from which she may choose an authorized physician for evaluation, and if necessary, treatment of her alleged work-related injury. However, it is insufficient at this time to establish she is likely to prevail at a hearing on the merits on the issues of temporary disability benefits and reimbursement for past medical and travel expenses.

---

[1] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix. Ms. Lewis attempted to submit many exhibits, including medical records, that the Court ruled inadmissible because a physician had neither certified nor signed the records. The Court made these records part of the record for identification purposes only.

1

## History of Claim

Ms. Lewis is a sixty-two-year-old resident of Sebastian, Florida, who began working as a housecleaner for Molly Maid on October 29, 2015. (T.R. 1 at 1.) At the hearing, Ms. Lewis testified she took the job because she was in "desperate financial straits" and felt she could perform the requirements of the job. On cross-examination, Maricella Farrar, the owner of Molly Maid, admitted she did not observe any indication Ms. Lewis suffered from back pain during the interview and orientation process.

Ms. Lewis testified the job required her to wear a vacuum cleaner on her back as she cleaned houses, which caused her back to begin hurting. She stated that, on her first day, she informed her trainer about her back pain while they were cleaning, and told Ms. Farrar about her pain at the end of the workday.

Ms. Farrar testified Ms. Lewis told her that her back was hurting, but Ms. Lewis attributed it to not being used to that kind of work. Ms. Farrar also testified Ms. Lewis told her she had injured her back more than twenty years ago when she inadvertently stepped from an upper parking lot to a lower one and fell four feet onto a parking curb.

Ms. Lewis testified that, on the following day, wearing the vacuum cleaner continued to bother her back, but she could not persuade her trainer to help her adjust the straps on it. On October 31, as she and her partner, Denicia McClain, were on their way to their third house, Ms. Lewis advised Ms. McClain she could not continue due to increasing back pain. In a written statement, Ms. McClain stated Ms. Lewis had complained about her back since the first day. (Ex. 12 at 5.) She also stated Ms. Lewis mentioned to her she injured her back a few years earlier in a car wreck, and she had retained counsel and received compensation for her injuries. *Id.*

On direct examination, Ms. Lewis denied making this statement, stating she had never been in a car accident wherein she hurt her back and received compensation. On cross-examination, Ms. Lewis initially testified she could not recall being in an automobile accident and claiming neck and back injuries, but after some prodding from defense counsel, eventually stated she remembered being rear-ended in Utah in 1996. However, she claimed the incident only resulted in minor injury.

Ms. McClain returned Ms. Lewis to Molly Maid's office, where Ms. Lewis told Ms. Farrar she was going to the emergency room due to severe low back pain. Ms. Farrar gave her a "Return to Work Job Description" form for her physician to complete. (Ex. 5.)

Ms. Lewis immediately went to the emergency room at Nashville General Hospital, where she received treatment from Dr. Sonya Reid-Lawrence. (Ex. 7.) Dr. Reid-Lawrence ordered x-rays of her cervical spine as well as MRIs of her lumbar and

2

thoracic spine. *Id.* In the "Reason for Exam" portion of the document, Dr. Reid-Lawrence noted, "s/p MVA with back pain." She also prescribed Naproxen and Cyclobenzaprine for pain. (Ex. 9.) The "Return to Work Job Description" stated Ms. Lewis suffered from low back pain, and restricted her physical activities to no lifting over five pounds, no overhead work, as well as restrictions on standing, sitting, and other physical activities. (Ex. 5.)

Ms. Lewis testified she informed Ms. Farrar of her physical restrictions, and they agreed Molly Maid had no job duties she could perform under those restrictions. Ms. Farrar prepared a Separation Notice dated November 3, which stated Molly Maid discharged Ms. Lewis due to unsuccessfully completing her training period. (Ex. 12 at 6.)

On November 5, Ms. Lewis returned the uniforms she had borrowed while working. Ms. Farrar testified she told Ms. Lewis that the "set-up fee" incurred when new employees purchased their uniforms was non-refundable and that Molly Maid would deduct the fee from her paycheck. Ms. Farrar stated Ms. Lewis became quite upset, and only then informed her she intended to file a workers' compensation claim for her back pain. Ms. Farrar testified that while Ms. Lewis had previously claimed she suffered from back pain, this was the first time she alleged the pain was related to her employment.

Ms. Farrar then conducted an investigation, and obtained a statement from Ms. McClain. (Ex. 12 at 1.) On November 11, she wrote a note to "Steve Lee or Todd," indicating she did not want a claim submitted for Ms. Lewis "unless she made a claim." *Id.*

On November 7, Ms. Lewis returned to Nashville General Hospital. (Ex. 16.) Her primary complaint was back pain she claimed began "three days after starting a new cleaning job that requires carrying a vacuum cleaner on her back." Dr. H. Solomon noted she was a "61 year old with [indecipherable] of low back pain since seven days." (Ex. 17.) On December 9, Ms. Lewis saw Dr. Reid-Lawrence. (Ex. 13.) She complained of "low back pain s/p MVA." *Id.* However, the record also appears to refer to low back pain from an injury at work. *Id.*

On January 21, 2015, Ms. Lewis sought treatment at Riverside Spine & Physical Medicine in Clarksville. (Ex. 3.) According to the "New Patient Health History Form," Ms. Lewis described her injury as "hired as a housekeeper. I had to wear a vacuum cleaner strapped on my back. Weight approx. 25-30 lbs. The bending over, pushing and pulling caused my back intense pain." (Ex. 3 at 19.) On January 22, Ms. Lewis returned to Riverside. (Ex. 3 at 14.) The "Consultation History" form stated that Ms. Lewis suffered from "lower back pain going into the middle of back." *Id.* The form states she had been suffering from this problem since "this episode, Oct. 28-getting worse. First started 25 years ago." *Id.* At the hearing, Ms. Lewis denied writing the information on

the Consultation Form, and further testified the statement was "misleading" in that she never said her problem "first started" twenty-five years ago.

The "Consultation History" form goes on to describe Ms. Lewis' "accidental injury" as follows:

> Worked as housekeeper, wears a vacuum cleaner on back. Does a lot of pushing and pulling while vacuuming. Fell 25 years-fell off a 4 ½ foot drop off. Was kicked in the back 40 years ago by a horse. Has trouble picking up anything that has any weight. Discomfort while driving.

*Id.* Dr. Tyler J. Jennings, DC, with Riverside, completed Ms. Lewis' evaluation on January 22. He assessed her with "Degeneration of lumbar or lumbosacral IVD (724.2) Lumbalgia, (737.30) Scoliosis/kyphoscoliosis—idiopathic, (724.1) Thoracalgia."

Dr. Jennings provided treatment for Ms. Lewis on January 26. (Ex. 3 at 12.) Ms. Lewis complained of "frequent tightness, aching and dull discomfort in the low back" as well as her right hip. *Id.* On examination, Dr. Jennings noted "areas of spasm, hypomobility and end point tenderness indicative of restriction and/or fixation at L4, left pelvis and right pelvis." *Id.* He also noted hypertonicity in the lumbar area. *Id.*

Dr. Jennings treated Ms. Lewis on five occasions over the next several days with the last visit occurring on February 5. (Ex. 3 at 3.) Ms. Lewis still complained of pain and discomfort in the back of her right hip. *Id.* Examination still revealed spasms, hypomobility and end point tenderness at her left pelvis and L5. *Id.*

At some point in 2015, Ms. Lewis moved to Florida. At the hearing, she testified she continues to suffer from back pain, which severely limits her activities. She testified she cannot stand for more than fifteen minutes or pick up anything that weighs more than five pounds. Mr. Tom Schaefer, a close friend of Ms. Lewis, also testified that Ms. Lewis' physical activities have been limited since she suffered her back injury on October 31, 2014. He testified she can no longer do normal household chores, or lift light items that were not a problem before.

Ms. Lewis filed a Petition for Benefit Determination seeking medical benefits on July 7, 2015. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on August 7, 2015. Ms. Lewis filed an REH on November 25, 2015, and the Court heard the matter on March 3, 2016.

At the Expedited Hearing, Ms. Lewis asserted she sustained a job-related injury to her back, and she timely notified Molly Maid of the injury. Therefore, she is entitled to workers' compensation benefits, including reimbursement for expenses incurred at Riverside, temporary disability benefits, mileage expenses and further authorized medical

4

treatment. Molly Maid countered that Ms. Lewis failed to provide any medical evidence establishing a causal connection between her alleged back injury and her employment with Molly Maid. Thus, she cannot establish she is likely to prevail on the issue of causation at a hearing on the merits. Furthermore, Ms. Lewis did not produce any evidence regarding the reasonableness and necessity of any past medical expenses or mileage expenses, or that any doctor has restricted her from working. As a result, Molly Maid argued the Court should deny all of Ms. Lewis' requests for benefits.

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Molly Maid asserts Ms. Lewis failed to produce sufficient evidence to show she is likely to prevail on the issue of causation regarding her alleged work-related back injury. In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

In this instance, the Court finds Ms. Lewis failed to produce any expert medical

5

evidence linking her back pain to her employment with Molly Maid. As a result, she has provided insufficient evidence to establish she is likely to prevail on the issue of compensability, and the Court denies her requests for reimbursement of medical expenses, temporary disability benefits, and mileage expenses at this time.

However, an employee does not have to prove compensability in order to establish the employer is obligated to provide a panel of physicians from which she may choose an authorized physician. *McCord, supra,* at *16, 17. In *McCord,* the Workers' Compensation Appeals Board found that:

> [W]hether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her burden at this interlocutory stage to support an Order compelling Employer to provide a panel of physicians.

*Id.* Thus, the question becomes whether Ms. Lewis has provided sufficient evidence to satisfy "her burden at this interlocutory stage" that she is entitled to a panel of physicians. *Id.* at 17.

The administrative rules governing an employer's obligation to provide a panel state, "[u]pon notice of any workplace injury, other than a minor injury for which no person could reasonably believe requires treatment from a physician, the employer shall immediately provide the injured employee a panel of physicians that meets the statutory requirements for treatment of the injury." Tenn. Comp. R. & Regs. 0800-02-01-.25(1) (2015). An employer who fails to comply with this rule without good cause could be assessed a civil penalty of up to $5,000. *Id.*

The Court finds Ms. Lewis' job with Molly Maid required her to wear a vacuum cleaner weighing twenty-five to thirty pounds strapped to her back while working to clean a home. The Court further finds that, on her first day, Ms. Lewis informed her trainer, as well as Ms. Farrar, the owner of Molly Maid, she was suffering from back pain because of her work duties, although she also discussed her back injury over twenty years earlier as a possible causal factor. Furthermore, the Court finds that on October 31, 2014, Ms. Lewis told her trainer, as well as Ms. Farrar, she could not complete her work due to severe pain in her low and mid-back, and she went to the emergency room for treatment. Finally, the Court finds that on November 5, 2014, Ms. Lewis expressly notified Ms. Farrar of her intent to pursue a workers' compensation claim with regard to her alleged work-related back injury. The Court determines Molly Maid had actual notice of Ms. Lewis' alleged work-related injury on October 31, 2014, or at least by November 5, 2014, at the latest, well within the thirty days required by Tennessee Code Annotated section 50-6-201 (2015).

6

Furthermore, Ms. Lewis testified that, while she did suffer a low back injury more than two decades ago, she did not suffer from disabling back pain prior to working for Molly Maid. Mr. Schaefer corroborated this testimony. The medical evidence presented, although not entirely clear, supports Ms. Lewis' allegation that she began suffering severe back pain while working for Molly Maid, which she attributed to using the vacuum cleaner. There is no medical proof establishing otherwise. Thus, the evidence presented at this time weighs in favor of Ms. Lewis' assertion that she did not suffer disabling back pain prior to her employment with Molly Maid.

Therefore, the Court finds Ms. Lewis provided sufficient evidence to satisfy "her burden at this interlocutory stage" that she is entitled to a panel of physicians. *Id.* at 17. As a result, Molly Maid is ordered to provide a panel of back specialists within Ms. Lewis' community from which Ms. Lewis may choose an authorized physician for evaluation, and if necessary, treatment of her alleged back injury in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015). The Court finds no evidence to support Ms. Lewis' claims for temporary disability and medical expenses at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Molly Maid shall provide a panel of back specialists within Ms. Lewis' community from which she may choose an authorized physician for evaluation, and if necessary, treatment of her alleged back injury in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015).

2. Ms. Lewis' requests for temporary disability benefits and reimbursement of medical and travel expenses are denied.

3. This matter is set for Initial Hearing/Status Conference on April 11, 2016, at 1:30 p.m. C.T.

**4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5.     For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED THIS THE 10ᵗʰ DAY OF MARCH, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.

Please Note:   You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be

8

made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

<u>Exhibits</u>:

1.  First Report of Injury;
2.  Affidavit of Lea Ann Lewis;
3.  Medical records from Riverside Spine & Physical Medicine;
4.  Emergency Room records from Nashville General Hospital (NGH) (marked for I.D. only);
5.  Return to Work Job Description Form;
6.  Discharge Notes from NGH (marked for I.D. only);
7.  Signed medical records from NGH;
8.  Patient itinerary form (marked for I.D. only);
9.  Medication list;
10. Invoice and fee estimate form from Riverside (marked for I.D. only);
11. Mileage expense form;
12. Molly Maid's personnel records;
13. Medical record from NGH dated December 9, 2014;
14. Unsigned medical records from NGH dated December 9, 2014 (marked for I.D. only);
15. Medication list;
16. Signed medical record from NGH dated November 7, 2014;
17. Signed medical record from NGH;
18. E-mail from Dr. Nick Muthart, D.C.;
19. Statement from Ms. Lewis (marked for I.D. only).

<u>Technical Record</u>:

1.  Petition for Benefit Determination;
2.  Dispute Certification Notice;
3.  Show Cause Order;
4.  Employee's Request for Expedited Hearing;
5.  Transfer Order;
6.  Show Cause Order;
7.  Pre-Hearing Order; and,
8.  Order for Continuance.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 10th day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|-----------------|
| Lea Ann Lewis | | | X | threewolves@gmail.com |
| Gordon C. Aulgur | | | X | Gordon.Aulgur@accidentfund.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

11